### 9318

### RALEIGH & C. R. CO. v. JONES *ET AL.*

#### (88 S. E. 896.)

1. WITNESSES—COMPETENCY—ATTORNEY AND CLIENT.—Where a party, without objection, testified concerning transactions and communications between himself and an attorney, which would otherwise have been privileged, he may be contradicted by the attorney; his testimony having waived the privilege of the communication.

2. ESTOPPEL—EQUITABLE ESTOPPEL—BURDEN OF PROOF.—A party urging the defense of equitable estoppel has the burden of proof.

3. APPEAL AND ERROR—TRIAL—REVIEW—HARMLESS ERROR.—In an action by a railroad company to recover possession of land over which it had a right of way, the railroad company's counsel stated in the presence of the jury that if verdict was for it, defendants would be

allowed to remove buildings on the land. Verdict went for the railroad company, and the trial Court on its own motion granted a new trial unless defendants should be permitted to remove the buildings within a reasonable time. The defense óf equitable estoppel, in that defendants had been allowed to .erect buildings on the land, was urged. *Held* that, in view of the action of the trial Court, any error in allowing the railroad company's counsel to state that defendants would be allowed to remove the buildings, as well as error on the part of the Court in repeating such statement, was not prejudicial.

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.—Error cannot be predicated on the exclusion of a question to a witness, where counsel failed to inform the Court of facts or issues rendering it relevant.

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.—In an action to recover possession of land, where defendant contended that plaintiff, having allowed the erection of buildings without objection, was estopped to set up its title, error in excluding testimony as to the value of the building was harmless, where the charge on estoppel directed the jury to find for defendants if plaintiff allowed them to make improvements on the land under the belief that they had title and did not make such a finding dependent on the value of the improvements.

Before DeVORE, J., Marion, December, 1914.    Affirmed.

Action by the Raleigh & Charleston Railroad Company against P. F. Jones and another. From a judgment for plaintiff, defendants appeal.

*Messrs. L. D. Lide* and *H. S. McCandlish,* for appellants, cite: *As to estoppel:* 84 S. C. 426, 430; 82 S. C. 24, 27; 93 S. C. 397; 159 U. S. 46, 49. *Privileged communications:* 40 Cyc. 2361, 2365; 30 S. C. 144, 150. *Burden of proof on issue as to estoppel:* 93 S. C. 190.

FOOTNOTE.—As to waiver of privilege as to confidential communications, see notes in 48 L. R. A. (N. S.) 395 to 421, 35 A. & E. Ann. Cas. 1915a, 438, 6 L. R. A. 481, 6 L. R. A. (N. S.) 1082, 40 L. R. A. (N. S.) 43, 20 A. & E. Ann. Cas. 1285. Communications to attorney, see notes in 67 L. R. A. 923, 26 A. & E. Ann. Cas. 1913a, 3, *Ib.* 1913b, 1310. Waiver of privilege on first trial as affecting its exercise on a second trial, see notes in L. R. A. 1916a, 524, 8 A. & E. Ann. Cas. 660, 15 A. & E. Ann. Cas. 935.

*Mr. L. M. Gasque,* for respondent, cites: *As to estoppel:* 82 S. C. 25. *Declarations of agent:* 100 S. C. 258. *Privileged communications:* 40 Cyc. 2364; 73 S. C. 158; 10 Enc. of Ev., p. 321; 44 S. C. 544. *Burden to prove estoppel:* 67 S. C. 446.

March 8, 1916.

The leading opinion was announced by MR. CHIEF JUSTICE GARY.

This is an action to recover possession of a small parcel of land, in the town of Marion, over which, it is alleged, the plaintiff has a right of way. It appears from the record that W. J. Montgomery, who formerly owned the land in dispute, executed a deed of conveyance thereof to T. C. McNeely, who thereafter, to wit, on the 5th of May, 1902, conveyed to the Carolina Northern Railway Company an easement in said land 100 feet wide—50 feet from the center of the track on each side—and an additional 100 feet on the west side, where the land in dispute lies. The said deed was recorded on the same day it was executed. By successive conveyances, which were duly recorded, the property of the Carolina Northern Railroad Company became vested in the plaintiff. After T. C. McNeely had conveyed the easement to Carolina Northern Railroad Company, he also made a conveyance of his remaining interest in said property to Mrs. Fannie McNeely, who, in turn, conveyed to the defendants. There is no question that the plaintiff is entitled to the land unless it is estopped by its conduct. The jury rendered a verdict in favor of the plaintiff, for the possession of the land, and the defendants appealed upon exceptions, the first of which is as follows:

"Because his Honor erred, it is respectfully submitted, in refusing to allow the defendants' witness, P. F. Jones, to testify as to the worth of the buildings placed upon the lands in question by the defendants, or as to the cost thereof, and in holding that the character of the said improvements

was not relevant, in that such testimony was strongly rele-
vant and competent on the defense of the estoppel, on which
the defendants relied, to wit, that plaintiff stood by and
allowed them to make valuable improvements on the land in
question, the defendants believing in good faith that they
had title thereto, the refusal to permit such testimony being
highly prejudicial to the defendants, because the same would
have naturally tended to support their said defense, and
because this testimony was unquestionably the only way the
defendants could give the jury an adequate and fair idea of
the nature of the improvements, which was the very essence
of their defense of estoppel, and without this testimony the
jury could not have properly considered said defense." '

The record shows that this question arose as follows:

"Q. About what are those buildings worth? (Plaintiff
objects to testimony in reference to betterments, as that
issue is not set up in the defense.) Q. What did they cost?
(Objected to.)

"Mr. Lide: We are not asking for betterments, we are
just trying to find out the character of the improvements.

"The Court: I cannot see how the character of the
improvements would be relevant."[1]


The second exception is as follows:

"Because his Honor erred, it is respectfully submitted, in'
allowing M. C. Woods, Esq., to testify in behalf of plaintiff,
over defendants' objection, to privileged communications
made to him by the defendant, P. F. Jones, in regard
to the purchase of land covered by defendants' deed,
such privileged communications being, in effect, that
he owned the ginhouse on the land that he understood
belonged to Miss Fannie McNeely, and that he understood
some mortgages on the land were about to be foreclosed,

FOOTNOTE.—[1]As to the disposition of this first exception, see opinion
by Mr. JUSTICE HYDRICK, next following, and dissenting opinion by Mr.
CHIEF JUSTICE GARY.

and that he was greatly worried about it, in that the evidence shows that the relation of attorney and client existed between Mr. Woods and defendants, with reference to the purchase of and procuring of a deed for this land, and such communications were privileged; and his Honor erred, it is respectfully submitted, in holding that if a lawyer wants to state the confidential communications of a client, he can do so, and that he is the only one that can take advantage of keeping silence, in that the rule of law is the reverse of that stated by his Honor."

There was testimony to the effect that the defendant, Jones, bought a ginhouse on the land in dispute before he received the title from Miss Fannie McNeely; that he went to see J. M. Turner about the title to the land upon which the ginhouse was situated; that Turner referred him to M. C. Woods, Esq., who was Turner's attorney and was then foreclosing a mortgage on the property then owned by Miss Fannie McNeely; that Jones employed M. C. Woods, Esq., as his attorney, to negotiate the purchase of the land for him, free from all incumbrances; that when Jones was on the stand as a witness, he was cross-examined by the plaintiff's attorney as to the transactions and communications between him and his attorney, for the purpose of showing that he then had notice of the plaintiff's right of way. Jones did not object to answering the questions propounded to him. Afterwards, when M. C. Woods, Esq., took the stand as a witness for the plaintiff, and commenced to testify as to what took place between him and his client, for the purpose of showing that he then informed Jones that the plaintiff's right of way covered the land in dispute, the defendants' attorneys objected on the ground that the communications between attorneys and client are privileged and cannot be disclosed by his attorney. In the case of *Greenough* v. *Gaskell*, 1 My. & K. 102, 103, Lord Ch. Brougham uses the following language, which is quoted with approval in Greenleaf on Evidence, sec. 237:

"If, touching matters that come within the ordinary scope of professional employment, they (attorneys) receive a communication in their professional capacity, either from a client or on his account and for his benefit in the transaction of his business, or, which amounts to the same thing, if they commit to paper in the course of employment on his behalf matters which they know through their professional relation to the client, they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information or produce the papers in any Court of law or equity, either as party or as witness."

See, also, 40 Cyc. 2361.

"As a general rule, every communication which the client makes to his legal adviser, for the purpose of professional advice or aid, upon the subject of his rights or liabilities, is to be deemed confidential, and the disclosure thereof by the attorney is forbidden, both by the common law and by express statutory provisions, in all jurisdictions. It will be readily seen, however, that the mere placing of a seal on the attorney's lips would not afford an adequate protection, if the client could be placed upon the witness stand and forced to testify to such communications, and hence it is also a general, and almost universally accepted, rule that a client cannot be compelled to disclose communications which his attorney cannot be permitted to disclose." 23 Enc. of Law 53-55.

"The rule is not restricted to such matters as may have been communicated in special confidence. The relation itself is of a confidential character, and every fact derived through the medium of it partakes of its nature. Hence it is not necessary, in order for a client to be entitled to claim privilege, that he should, at the time of making the communications, enjoin secrecy upon the attorney, or even be aware of the existence of any privilege." *Id.* 56; 40 Cyc. 2362.

"An attorney, employed by two or more persons to give

professional advice or assistance in a matter, in which they are mutually interested, can, on litigation subsequently arising between such persons, or their representatives, be examined as a witness, at the instance of either, as to communications made when he was acting as attorney for all.    But he cannot disclose such communications in a controversy between his client, or either of them, and third persons." *Id.* 65; 40 Cyc. 2368, 2369; *Wilson* v. *Gordon,* 73 S. C. 155, 53 S. E. 79; *Moffatt* v. *Hardin,* 22 S. C. 9.

The foregoing authorities show: (1) That his Honor, the Circuit Judge, erred in ruling that if a lawyer wishes to disclose the communications between him and his client he can do so, and that he is the only one that can take advantage of keeping silence; (2) that the confidential nature of the communication, by which it is privileged from disclosure arises from the relation of attorney and client, and is not dependent upon the fact that it was communicated in confidence as a secret; (3) that if an attorney represents more than one client in a transaction, he is not permitted to disclose what took place between either of them and a third party; (4) that a client is privileged from disclosing on the witness stand communications between him and his attorney; (5) that if he, however, testifies on cross-examination as to communications between him and his attorney, without insisting upon his right to refuse to testify as to privileged communications, the attorney may be called as a witness by a third party to contradict his testimony.

The third exception is as follows:

"Because his Honor erred, it is respectfully submitted, in charging the jury that in a suit to recover the possession of land, if the defendant sets up a plea of estoppel, he stands in the same relation with reference to proving estoppel as the plaintiff does in proving his case, and the party setting up estoppel must prove it by the greater weight of the evidence, just as the plaintiff has to prove his

case by the greater weight of the evidence, in that, in a suit for the recovery of the possession of land, the defendant need not plead estoppel, and the same is not an affirmative defense, and the burden is not upon the defendant to prove the same by the greater weight of the evidence, because the burden is on the plaintiff to recover on the strength of his title, and the burden of proof cannot shift to the defendant."

The appellants' attorneys frankly admit that they have misgivings as to this question, which is conclusively settled by the case of *Chambers* v. *Bookman,* 67 S. C. 432, 46 S. E. 39, in which the Court says:

"Estoppel must be established by the preponderance of the evidence, and the burden rests on the party claiming the estoppel."

The fourth exception is as follows:

"Because his Honor erred, it is respectfully submitted, in permitting plaintiff's counsel to state in the presence of the jury, when they returned from their room and asked the Court the following questions: 'If the verdict is for the plaintiff, would the defendants have the right to move the buildings off the land?'—that there would be no objection to the defendants removing the buildings, and in repeating the said statement of plaintiff's counsel of jury; in that the effect of the statement of plaintiff's counsel and its repetition by the presiding Judge and his comments thereon convinced the jury that the plaintiff agreed for the defendants to remove the buildings on the land in question, and the jury were erroneously led to believe that if the plaintiff allowed the removal of the buildings, the defense of estoppel had no effect; whereas, to permit defendants to remove the buildings cannot relieve the plaintiff from estoppel, especially when there was no evidence in the case that the buildings could be removed by the defendants, so as to be of any benefit to them."

His Honor, the presiding Judge, on his own motion, granted a new trial, unless the defendants should be permitted to remove from the land in dispute the buildings placed thereon by them, within a reasonable time. Under these circumstances, it cannot be successfully contended, that the language of plaintiff's attorney and of the Circuit Judge was prejudicial to the rights of the defendants.

The opinion of the majority of the Court was delivered by Mr. JUSTICE HYDRICK.

I concur in the disposition of the third and fourth exceptions and in overruling the second exception on the ground for the reasons stated by the Chief Justice in his opinion. But I am not prepared to assent in full to the statement of the result of the authorities quoted and cited in discussing this exception, and, as this is not necessary to the decision of this case, I prefer to reserve my opinion as to some of the propositions stated.

I think the first exception should also be overruled and the judgment below affirmed, because it is in accord with the substantial justice of the case. The error assigned in the first exception does not call for reversal of the judgment for two reasons: First, because appellants' attorney did not inform the trial Judge why he sought to introduce the testimony. The rule, often declared by this Court, is that when testimony is objected to as irrelevant, it is incumbent on the party offering it to make its relevancy appear to the trial Court, and this is so because it often happens that the relevancy of testimony offered is not apparent until it is pointed out. When this testimony was offered, plaintiff's attorney objected to it under the supposition that it was an attempt to prove betterments, which had not been claimed in the answer. Defendants' attorney replied:

"We are not asking for betterments; we are just trying to find out the character of the improvements."

Thereupon the presiding Judge said:

"I cannot see how the character of the improvements would be relevant."

Up to that point, so far as the record shows, not a word had been said, in the pleadings or elsewhere, to advise the Court or opposing counsel that defendants relied upon the defense of estoppel. If they had then informed the Court of that defense, the relevancy of the testimony would have been made to appear, and no doubt it would have been admitted. Failing to do this, I do not think it should avail them as a ground of appeal.

Second, from the Judge's charge on the subject of estoppel, which was favorable to defendants, it will be seen that the exclusion of testimony as to the cost of the buildings was not prejudicial to defendants, because the jury was instructed, in substance, that, if plaintiff stood by and saw defendants making the improvements on the land in dispute, under the belief that they had title to it, then plaintiff was estopped, and the verdict must be for defendants. In connection with these instructions, the Court said nothing as to the character or cost of the improvements, so that the jury must have understood that it made no difference, so far as the validity of the defense was concerned, whether the improvements cost much or little, provided the other elements of estoppel existed.

For the reasons above stated, the judgment of the Circuit Court in affirmed.


MESSRS. JUSTICES WATTS and GAGE concur in the opinion announced by MR. JUSTICE HYDRICK.


MR. CHIEF JUSTICE GARY, *dissenting as to disposition of the first exception.* The improvements consisted of an office, boiler house, and millhouse. In order to sustain the defense of estoppel, it was incumbent on the defendants to

show that they made the improvements *bona fide,* and under the belief that the land belonged to them. Not only is the nature of the improvements important in determining whether they were made in good faith, but the amount expended in erecting them likewise throws light upon such a question. If a person expends a large sum in improvements, such fact more naturally tends to show good faith than would arise from the expenditure of an insignificant sum. This exception should be sustained.

MR. JUSTICE FRASER concurs in the opinion announced by the CHIEF JUSTICE.