862 F.2d 314
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roger A. Stanton RUSSELL, Plaintiff--Appellant,
v.
Edd P. CHARIKER, M.D., South Carolina Cardiovascular
Associates, P.A., Defendant--Appellee,
and
Carroll S. BROWN, M.D., Trident Anesthesia Group, A
Professional Association, Defendants.
 No. 88-3518.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 12, 1988.
Decided Nov. 3, 1988.
 
 Ellis I. Kahn (Solomon, Kahn, Smith & Baumil on brief) for appellant.
 Morris Dawes Cooke, Jr. (Barnwell, Whaley, Patterson & Helms on brief) for appellee.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge
 PER CURIAM:
 
 
 1
 This medical malpractice action against a thoracic surgeon went to a jury. The jury found for the defendant and the plaintiff has appealed, complaining of the court's instructions to the jury.
 
 
 2
 We find no error.
 
 
 3
 In 1979, the plaintiff suffered a partial collapse of one of his lungs. The defendant performed a posterior lateral thoracotomy, an incision into the chest cavity, in order to release the trapped air and reinflate the lung. The scar indicates that the incision was at the proper place and of the size appropriate to the procedure.
 
 
 4
 Some three years later, the plaintiff consulted an orthopedic surgeon about weakness in his right arm and partial paralysis of two fingers of his right hand. The orthopedist diagnosed the problem as a "winged scapula," a condition in which the shoulder blade is not properly connected to the backbone.
 
 
 5
 The plaintiff testified that he experienced a tingling sensation in his right hand and fingers shortly after the surgical procedure. He soon experienced muscle spasms and weakness in his right arm. There was testimony, however, that he did not consult a physician for these symptoms until three years later. Those physicians whom he consulted for other reasons noticed nothing wrong with the right arm or hand.
 
 
 6
 The plaintiff offered a physician as an expert witness. He opined that, in the performance of the thoracotomy, the defendant, mistakenly, may have inserted his hand between the skin and the chest muscles to reach upward, beyond the first rib, for the purpose of counting the ribs downward. Inadvertently, he might have touched and injured nerves leading to the right arm, but the witness testified that he had never read or heard of that kind of injury arising from a thoracotomy.
 
 
 7
 The defendant presented direct and expert testimony that standard procedure was followed and that nothing unusual occurred during the surgery.
 
 
 8
 The trial judge submitted the case to the jury. He told the jury that, under South Carolina law, a finding of a deviation from accepted medical procedure should not be made in the absence of "other evidence" than a poor result. He made it quite clear that such "other evidence" might be circumstantial evidence. That substantially complied with the requirements of South Carolina law. See Childers v. Gas Lines, Inc., 248 S.C. 316, 149 S.E.2d 761 (1966).
 
 
 9
 South Carolina does not recognize the doctrine of res ipsa loquitur, but it reaches a point approaching the same result by its rule that a finding of negligence may be based entirely upon circumstantial evidence. The trial judge, however, submitted the case to the jury. He told the jury that a finding that the defendant had departed from accepted practice could be founded upon circumstantial evidence, although evidence of a poor result, alone, was not enough.
 
 
 10
 We conclude that there was no error in the instructions, and that the plaintiff got all of his due when the case was submitted to the jury.
 
 
 11
 AFFIRMED.